CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
AIMEE CARLISLE (Bar No. 351972)
(E-Mail: Aimee_Carlisle@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
KYA CHRISTIAN NELSON

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KYA CHRISTIAN NELSON,<br><br>Defendant. | Case No. 2:22-CR-00598-JAK<br><br>**KYA CHRISTIAN NELSON'S SENTENCING POSITION PAPER**<br><br>**Hearing date:** May 1, 2025<br>**Hearing time:** 8:30 a.m.<br>**Location:** Courtroom of the Hon.<br>John A. Kronstadt |

//
//
//
//

1

1    Kya Christian Nelson, by and through his counsel of record, Deputy Federal
2    Public Defender Aimee J. Carlisle, submits this sentencing memorandum, including
3    objections to the Pre-sentence report (Dkt. 37).
4    This sentencing memorandum is based on the attached memorandum, attached
5    exhibits, all records and files in this case, and on any further evidence or argument the
6    Court may wish to consider at the sentencing hearing.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: April 17, 2025        By  */s/ Aimee J. Carlisle*
                             AIMEE J. CARLISLE
                             Deputy Federal Public Defender
                             Attorney for Kya Christian Nelson

## I.     INTRODUCTION

Mr. Nelson suffered tremendous hardships as a child. His mother, battling her own demons and additions, abandoned him. He lived in homes, on streets, and at campsites where few resources were available but fleas were plentiful. He grew up in such derelict circumstances that he was eventually placed in foster care. He rotated in and out of foster care for years. He has a seventh-grade education because no adult took the responsibility of ensuring that a young Kya continued going to school. These challenges led to his long struggle with ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and addition to drugs.

When Mr. Nelson was barely nineteen years old, he committed the crimes that ultimately brought him before this Court. Now, at twenty-three years old, he stands before the Court after spending the past several years in prison. His struggles with trauma, ▓▓▓▓▓▓▓, and drug addiction, led to his poor decision-making in this case and were the driving force behind his conduct.

However, Mr. Nelson has grown tremendously in the years he has been in jail and prison since his actions in this case. He has learned firsthand the consequences of his actions and deeply regrets making poor choices. Mr. Nelson has taken full responsibility for his actions. He has agreed to severe punishment: a potential sentence of forty-two to sixty months. Although, pursuant to the plea agreement, this requested sentence will be concurrent to the sentence he is currently serving in Kentucky in *Commonwealth v. Nelson*, Case. No. 21-CR-00095, he also agreed that no prior imprisonment (other than credits that the Bureau of Prisons may allow under 18 U.S.C. § 3585(b)) may be credited against this stipulated sentence, including credit under Sentencing Guideline § 5G1.3. This requested sentence is a significant sanction for the crimes teenage Mr. Nelson committed.

18 U.S.C. § 3553(a) requires that the Court impose a sentence "no greater than necessary" to comply with the purposes of sentencing. *Id.* Based on the 18 U.S.C. §

3

3553(a) factors, Mr. Nelson respectfully requests that the Court impose a sentence of 42 months' imprisonment consistent with the plea agreement.

## II. ARGUMENT

### A. Mr. Nelson objects to the United States Probation Office's Presentence Report.

Mr. Nelson objects to portions of the Presentence Report ("PSR") completed by the United States Probation Office ("the probation office"), Dkt. 37.

At ¶ 86, the PSR states, "[Mr. Nelson] also reports being under the influence of methamphetamine and heroin during the instant offense." PSR ¶ 86. Mr. Nelson was not under the influence of methamphetamine and heroin at the time of the offenses in this case. He did not begin using those drugs until after he was imprisoned. Mr. Nelson was under the influence of marijuana at the time he committed the instant crimes.

### B. Under *Booker*, the Sentencing Guidelines provide recommendations, not mandates, to the Court for sentencing.

In *Booker*, the Supreme Court made clear that the Sentencing Reform Act of 1984, rather than the Sentencing Guidelines, governs sentencing decisions. *United States v. Booker*, 543 U.S. 220, 260-61 (2005); 18 U.S.C. §3553(a). After *Booker*, the guidelines are no longer the sole consideration of the Court in determining a sentence in a particular case; rather, the guidelines are now purely advisory. *Id.* Today, the "overarching statutory charge" mandates the district court to "impose a sentence sufficient, but not greater than necessary" to reflect "the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or correctional treatment." *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc) (citing 18 U.S.C. § 3553(a) and (a)(2)).

The paradigmatic shift that *Booker* created expanded the choices that a judge has in sentencing a particular defendant. *See Cunningham v. California*, 549 U.S. 270, 287 (2007) (explaining that "judges would no longer be tied to the sentencing range indicated in the Guidelines."). Although judges are mandated "to take account of the Guidelines together with other sentencing goals," they "may not presume that the Guidelines range is reasonable." *Gall v. United States*, 552 U.S. 38, 50 (2007). Additionally, in a particular case, a judge has the autonomy to decide that "the Guidelines sentence itself fails to properly reflect § 3553(a) considerations," that "the case falls outside the 'heartland' to which the Commission intends individual Guidelines to apply," or simply that "the case warrants a different sentence regardless." *United States v. Rita*, 551 U.S. 338, 351(2007). In instances where the sentencing court determines the defendant should be sentenced outside the guidelines range, the court need not justify the variance based upon "'extraordinary' circumstances." *Gall*, 552 U.S. at 47. Likewise, the sentencing court need not apply "a rigid mathematical formula that uses a percentage of a departure as the standard for determining the strength of the justification required for a specific sentence." *Id*. Rather, the sentencing court need only "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id*. at 50.

### III. POSITION ON SENTENCING

Mr. Nelson pled guilty to Conspiracy in violation of 18 U.S.C. § 371 (count 1) and Unauthorized Access to a Protected Computer to Obtain Information, in violation of 18 U.S.C. § 1030(a)(2)(C), (c)(2)(B)(ii) (counts 2 and 4). In light of the strong mitigating factors, the length of time he has already been in custody. and the length of time he has agreed to serve in this case under the plea agreement, a concurrent sentence of 42 months is sufficient, but not greater than necessary, to punish this offense.

**A. Review of the 18 U.S.C. § 3553(a) factors shows that this Court should sentence Mr. Nelson to 42 months of imprisonment concurrent to the**

**Kentucky sentence he is currently serving.**

    **1.  Mr. Nelson endured significant trauma as a child.**

Mr. Nelson's childhood in Racine, Wisconsin was rife with neglect, trauma, poverty, and abuse. He had little structure and few people to whom he could turn to for guidance. No one ensured that all of his needs were met, and he ultimately dropped out of school before even attending high school. Mr. Nelson's childhood is unfortunately unique in the significance and depth of the trauma that he experienced.

Mr. Nelson grew up in Racine, Wisconsin with his father and two brothers. PSR ¶ 72. His mother was absent due to her own struggles with mental illness and drug addiction.

Despite his father's best efforts, his family was impoverished. When Nelson had a house to live in, it was a "small two-bedroom apartment" for all four of them. *Id.* His father was the sole income earner in the family, and worked as a machinist. *Id.* In addition to his meager income, Mr. Nelson and his family also lived off government financial assistance. *Id.* Although his father did his best to provide for his family, he struggled, and so the kids struggled, too. Their living conditions were "barely livable." *Id.* Their home, when they had one, hardly had a roof. Mr. Nelson and his family experienced homelessness: they often lived on the streets or at campsites. *Id.* When they were homeless, Mr. Nelson would use the restroom at gas station instead use or buckets. *See id.* He remembers having with fleas in their homes and often going hungry. *Id.* In that dire environment, there was no space for discussing emotional needs, and punishment was not issued gently but instead in the form of whuppings. *Id.* at ¶ 73.

Mr. Nelson was so severely neglected as a child that Child Protective Services frequently visited their home. *Id.* at ¶ 73. At around eleven years old, he and his brothers first entered foster care. *Id.* They then grew up in and out of foster care, sometimes together but also sometimes separated. When he was in foster care, he

generally did not see his father. However, no one was truly looking out for and caring for Mr. Nelson's most basic and required needs, and by the seventh grade he had dropped out of school because no adult ensured that he completed his education. *See id.* at ¶ 75.

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████
█████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████████████████████████

### 3. Mr. Nelson's trauma caused him to develop drug addictions.

Given all of the trauma and neglect Mr. Nelson experienced, it is not surprising that Mr. Nelson, like so many people who have overcome trauma and difficult circumstances, developed an addiction to drugs.

He grew up knowing that his mother had in many ways chosen drugs over him: when his parents divorced when he was just five years old, his father was granted full custody of him and his brothers due to his mother's heroin use. *Id.* at ¶ 71. Her drug addiction was so severe that she was incarcerated for trafficking heroin. *Id.* She continues to struggle with addiction and mental illness, just like Mr. Nelson. *Id.*

At just twelve years old, Mr. Nelson tried marijuana for the first time. *Id.* at ¶ 85.

He eventually began using mushrooms and acid. *Id.* While imprisoned as a teenager, Mr. Nelson was introduced to methamphetamine and heroin. *Id.* ¶ 86.

Despite his lengthy history of using drugs, Mr. Nelson plans to not follow in his mother's footsteps and live a life addicted to drugs. While in BOP custody, he has begun medical treatment for his drug addiction. He hopes to receive additional and more intensive drug treatment. *Id.* ¶ 87. He respectfully requests that this Court recommended that he participate in the RDAP program and any other drug treatment programs offered by the Bureau of Prisons.

### 4. Mr. Nelson plans to complete his education and be a law-abiding member of society.

Because Mr. Nelson has been incarcerated for the past several years, he has little employment experience; he worked previously as a dishwasher in Wisconsin and has worked in the kitchen while incarcerated. *Id.* at ¶ 90. However, Mr. Nelson was plans for his future. Mr. Nelson would like to complete drug treatment. *Id.* Upon is eventual release from prison, Mr. Nelson plans to live with his father in Wisconsin, who will help him get back on his feet. *Id.* at ¶¶ 77-78. He also hopes to obtain his GED. *Id.* at ¶ 75. He also plans to further his education by obtaining a degree in technology. *Id.* at ¶ 89. He plans to live a law-abiding life and never find himself in this situation again.

### 5. Considering just punishment and deterrence warrants a 42-month sentence.

A forty-two month sentence, concurrent to the sentence Mr. Nelson is currently serving in his Kentucky case, serves the purpose of providing a severe sanction that constitutes just punishment for the offense, while also taking into account Mr. Nelson's unique history and characteristics and the nature and circumstances of the offense. He has taken full responsibility for his actions. He plans on never finding himself in this type of situation again.

//

## IV. CONCLUSION

Given his unique history and characteristics, Mr. Nelson respectfully requests that the Court sentence him to 42 months of imprisonment, concurrent to the sentence he is currently serving in Kentucky in *Commonwealth v. Nelson*, Case No. 21-CR-00095, 3 years' supervised release with conditions to be fixed by the Court; no fine; and a $300 special assessment. Mr. Nelson further requests that the Court recommend him for the RDAP program.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: April 17, 2025         By  */s/ Aimee J. Carlisle*
AIMEE J. CARLISLE
Deputy Federal Public Defender
Attorney for Kya Christian Nelson

9

## PROOF OF SERVICE

I, Victoria Loza, declare that I am a resident or employed in Los Angeles County, California; that my business address is the Office of the Federal Public Defender, 321 East 2nd Street, Los Angeles, California 90012-4202, Telephone No. (213) 894-2854; that I am over the age of eighteen years; that I am not a party to the action entitled above; that I am employed by the Federal Public Defender for the Central District of California, who is a member of the Bar of the State of California, and at whose direction I served a copy of the attached **KYA CHRISTIAN NELSON'S SENTENCING POSITION** on the following individual(s) by:

[ ] Placing same in a sealed envelope for collection and interoffice delivery addressed as follows:

[ ] Placing same in an envelope for hand delivery addressed as follows:

[ ] Placing same in a sealed envelope for collection and mailing via the United States Post Office addressed as follows:

[ ] Faxing same via facsimile machine addressed as follows:

[X] Sending VIA Email

**Michelle Wang, USPO**
**Santa Ana, CA 92701**
**Michelle_Wang@cacp.uscourts.gov**

This proof of service is executed at Los Angeles, California, on **April 17, 2025**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

*Victoria Loza*          .
**Victoria Loza**

10